## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SELMA DIVISION

|  |  |
|---|---|
| **In re:** | Chapter 11 |
| **JUDSON COLLEGE, INC.,** | Case No. 24-_____-_____ |
| **Debtor**. | |

## CHAPTER 11 PLAN OF JUDSON COLLEGE, INC.

January 8, 2024

THIS PLAN (AS MAY BE AMENDED) WILL BE SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY SECURITIES.

**BRADLEY ARANT BOULT CUMMINGS LLP**
Co-Counsel for the Debtor
Jay Bender, Esq.
James Bailey, Esq.
1819 5th Avenue North
Birmingham, AL 35203

**SILVER VOIT GARRETT & WATKINS, ATTORNEYS AT LAW, P.C.**
Co-Counsel for the Debtor
Alexandra Garrett, Esq.
4317-A Midmost Drive
Mobile, AL 36609

# Table of Contents

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ................................................................ 2

- A. Defined Terms ................................................................................ 2
- B. Rules of Interpretation .................................................................. 14
- C. Computation of Time .................................................................... 15
- D. Governing Law ............................................................................. 15
- E. Reference to Monetary Figures ..................................................... 15

ARTICLE II ADMINISTRATIVE EXPENSES AND  OTHER UNCLASSIFIED CLAIMS ............................................................................................... 15

- A. General Administrative Expenses ................................................. 15
- B. General Administrative Expense Bar Date ..................................... 16
- C. Professional Fees .......................................................................... 16
  - 1. Final Fee Applications ......................................................... 16
  - 2. Plan Professional Fee Reserve ............................................. 16
- D. Priority Tax Claims ....................................................................... 17

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS ................................ 17

- A. Classification of Claims ................................................................ 17
- B. Treatment of Claims and Interests ................................................ 18
  - 1. Class 1 – Priority Non-Tax Claims ....................................... 18
  - 2. Class 2 – Bond Lease Claim ................................................. 18
  - 3. Class 3 – The Bank Claims .................................................. 20
  - 4. Class 4 – Indemnity Claims ................................................. 21
  - 5. Class 5 – General Unsecured Claims .................................... 21
- C. Special Provision Governing Unimpaired Claims ............................ 22

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ............................ 22

- A. Voting Classes .............................................................................. 22
- B. Presumed Acceptance of the Plan ................................................. 22
- C. Non-Consensual Confirmation ..................................................... 22
- D. Elimination of Vacant Classes ...................................................... 23
- E. Subordinated Claims ..................................................................... 23

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 23

    A.    General Settlement of Claims ................................................................. 23
    B.    Sources of Cash for Plan Distributions .................................................. 23
    C.    Continued Corporate Existence; Vesting of Revested Assets ............... 24
    D.    Establishment of Plan Trust ................................................................... 24
    E.    Corporate Action ................................................................................... 25
    F.    Closing of the Chapter 11 Case ............................................................. 26
    G.    Costs and Expenses of the Plan Trustee ................................................ 26
    H.    Cancellation of Loans, Securities and Agreements ............................... 26
    I.    Effectuating Documents; Further Transactions ..................................... 27
    J.    Section 1146 Exemption ........................................................................ 27
    K.    Retained Claims .................................................................................... 27

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED
LEASES ................................................................................................................. 28

    A.    Executory Contracts and Unexpired Leases .......................................... 28
    B.    Rejection Damages Bar Date ................................................................. 28
    C.    Effect of Post-Confirmation Rejection .................................................. 29
    D.    Non-Occurrence of Effective Date ........................................................ 29
    E.    Indemnification Obligations .................................................................. 29
    F.    Reservation of Rights ............................................................................ 29

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS .......................................... 30

    A.    Plan Distributions .................................................................................. 30
    B.    Distribution Record Date ....................................................................... 30
    C.    Objections to Claims; Estimation of Claims ......................................... 30
    D.    No Distributions Pending Allowance ..................................................... 31
    E.    Reserve of Cash Distributions ............................................................... 31
    F.    Distribution After Allowance ................................................................ 31
    G.    No Recourse ........................................................................................... 31
    H.    Application of Distributions .................................................................. 32
    I.    Undeliverable Distributions and Unclaimed Property ........................... 32
    J.    Compliance with Tax Requirements ...................................................... 32
    K.    No Postpetition Interest on Claims ........................................................ 32
    L.    Foreign Currency Exchange Rate .......................................................... 33
    M.    Setoffs and Recoupment ........................................................................ 33
    N.    Distributions Free and Clear .................................................................. 33
    O.    De-Minimis Distributions and Donation ............................................... 33
    P.    Claims Paid or Payable by Third Parties ............................................... 33

        1.    Claims Paid by Third Parties .................................................... 33
        2.    Claims Payable by Third Parties ............................................... 34
        3.    Applicability of Insurance Policies ........................................... 34

ARTICLE VIII EFFECTS OF PLAN CONFIRMATION .......................................................... 34

    A.     Injunction ............................................................................................... 34
    B.     Exculpation and Limitation of Liability ............................................... 35
    C.     Release by the Debtor ............................................................................ 35
    D.     Release by Holders of Claims and other Parties in Interest.................... 36
    E.     Term of Injunctions or Stays.................................................................. 37

ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE.................... 37

    A.     Conditions to the Effective Date ............................................................ 37
    B.     Waiver of Conditions.............................................................................. 39
    C.     Substantial Consummation ..................................................................... 39

ARTICLE X MODIFICATION, REVOCATION OR  WITHDRAWAL OF PLAN ............... 39

    A.     Modification and Amendments............................................................... 39
    B.     Effect of Confirmation on Modifications ............................................... 39
    C.     Revocation or Withdrawal of Plan; Effect of Non-Occurrence of
            Confirmation Date or Effective Date ..................................................... 39

ARTICLE XI RETENTION OF JURISDICTION.................................................................... 40

ARTICLE XII MISCELLANEOUS PROVISIONS ................................................................. 42

    A.     Immediate Binding Effect....................................................................... 42
    B.     Additional Documents ............................................................................ 42
    C.     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ......... 42
    D.     Reservation of Rights............................................................................. 43
    E.     Successors and Assigns.......................................................................... 43
    F.     Notices ................................................................................................... 43
    G.     Term of Injunctions or Stays.................................................................. 44
    H.     Entire Agreement ................................................................................... 44
    I.      Exhibits ................................................................................................. 44
    J.     Nonseverability of Plan Provisions........................................................ 44
    K.     Votes Solicited in Good Faith................................................................ 45
    L.     Closing of the Chapter 11 Case ............................................................. 45
    M.     Document Retention ............................................................................... 45
    N.     Conflicts ................................................................................................ 45

**Introduction**

Judson College, Inc. (the "Debtor"), an Alabama non-profit corporation and the debtor and debtor in possession in this Chapter 11 Case,[1] proposes this plan (together with the Plan Supplement, and as the same may be modified, amended, or supplemented in accordance with the terms hereof, the "Plan") in connection with the orderly wind-down of its operations and the implementation of the Comprehensive Mediation Settlement of all Claims asserted against it by the Banks, the Indenture Trustee, the Bondholders, and the Indemnity Claimants.

This Plan contemplates the liquidation and distribution of all property of the Debtor's Estate in accordance with terms of the Comprehensive Mediation Settlement Agreement, the UPMIFA Order, and the Bankruptcy Code. The Comprehensive Mediation Settlement will be consummated pursuant to the Plan to be confirmed by the Bankruptcy Court. The Comprehensive Mediation Settlement provides for the disposition of substantially all of the Debtor's remaining property of the Estate in accordance with Chapter 11 of the Bankruptcy Code.

Holders of Claims may refer to the Disclosure Statement for a discussion of the Debtor's history, operations, assets, and liabilities, as well as a summary and description of the Plan.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, RULE 3019 OF THE BANKRUPTCY RULES, AND ARTICLE X OF THE PLAN, THE DEBTOR RESERVES ITS RIGHT TO ALTER, AMEND, MODIFY, SUPPLEMENT, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS CONSUMMATION.**

---

[1] All undefined capitalized terms in this Introduction are defined in Article I.A.

# ARTICLE I
# DEFINED TERMS, RULES OF INTERPRETATION,
# COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below:

*"Administrative Expense"* means any cost or expense of administration of the Estate entitled to priority pursuant to sections 503(b) (including Claims arising under section 503(b)(9)), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate; (b) professional compensation and reimbursement awarded or allowed pursuant to sections 330(a) or 331 of the Bankruptcy Code, including the Professional Fees or otherwise allowed under section 503(b) of the Bankruptcy Code; (c) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date and through the Effective Date; and (d) any and all fees and charges assessed against the Estates pursuant to section 1930 of title 28 of the United States Code.

*"Allowed"* means, with respect to any Claim, such Claim or portion thereof against or in the Debtor: (a) that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (b) as to which the deadline for objecting or seeking estimation has passed, and no objection or request for estimation has been filed; (c) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed pursuant to the terms of (i) a Final Order, (ii) an agreement in writing by and among the holder of such Claim and the Debtor or the Plan Trustee, as applicable, or (iii) the Plan.

*"Ancillary Real Estate"* means any and all real property owned by the Debtor as of the Petition Date that was not historically used by the Debtor in its educational operations, title to which real property shall vest in the Plan Trust on the Effective Date and which real property interests shall be described more particularly in the Plan Supplement, which description shall be prepared by the Debtor and subject to the approval of the Banks and counsel for the Bondholders, which approval shall not be unreasonably withheld.

*"Archival and Historical Items"* means the archival and historical items of the Debtor of *de minimis* value that are to remain titled with, and vest in, the Reorganized Debtor on the Effective Date, the list of which items shall be part of the Plan Supplement and shall be prepared by the Debtor and subject to the approval of the Banks and counsel for the Bondholders, which approval shall not be unreasonably withheld.

*"Article"* refers to an article of the Plan.

*"Assets"* means all property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, including Cash, Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

2

*"Authority"* means The Educational Building Authority of the City of Marion, Alabama.

*"Avoidance Actions"* means all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtor under any section contained within chapter 5 of the Bankruptcy Code, regardless whether such action has been commenced prior to the Effective Date.

*"Ballot"* means the ballot forms distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan, on which form the holder may cast its vote in respect of this Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Ballot Tabulator on or before the Ballot Deadline in order to be counted.

*"Ballot Deadline"* means the deadline established by the Bankruptcy Court for the delivery of executed Ballots to the Ballot Tabulator.

*"Ballot Record Date"* means the date established by the Bankruptcy Court to determine which Creditors are entitled to vote on the Plan.

*"Bankruptcy Administrator"* means the Office of the Bankruptcy Administrator for the Bankruptcy Court.

*"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101–1532 *et seq.*

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of Alabama or any other court having jurisdiction over the Chapter 11 Case.

*"Ballot Tabulator"* means the Debtor, or any other Person designated by the Debtor to tabulate Ballots.

*"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court.

*"Bank Claims"* means, collectively, the FCB Claim, the Marion Bank Claim, and the West Alabama Bank Claim.

*"Bank Loan Documents"* means the FCB Promissory Note, the Marion Bank Promissory Notes, the West Alabama Bank Promissory Note, and any and all other loan or credit agreements, security or pledge agreements, and all other agreements and documents executed and delivered in connection therewith.

*"Banks"* means FCB, Marion Bank, and West Alabama Bank.

*"Banks Lawsuit"* means the case styled *West Alabama Bank & Trust, et al. v. Judson College*, CV-2022-900037.00, filed in the Circuit Court of Perry County, Alabama.

*"Baptist Entities"* means, collectively, the Convention, the State Board of Missions, the Baptist Foundation, and Rick Lance.

*"Baptist Entities Plan Contribution"* means the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00) to be paid in Cash by the Baptist Entities to the Debtor on or before the Plan Effective Date, with such sum to then be disbursed by the Debtor on or as soon as practicable after the Effective Date in accordance with the terms of this Plan.

*"Baptist Foundation"* means The Baptist Foundation of Alabama, both in its separate legal capacity and in its capacity as trustee for certain of the External Trusts.

*"Bond Claims"* means any claims of any Bondholders pertaining in any way to the Bonds, including but not limited to any claims that were or could have been asserted by any of the plaintiffs in the Mann Lawsuit, on their own behalf or on behalf of other or all Bondholders, against any of the defendants in the Mann Lawsuit or any of the Debtor's other Representatives (excluding the College Accountants), irrespective of whether those Claims or Causes of Action alleged claims for gross negligence, willful, misconduct, fraud, or criminal acts.

*"Bond Documents"* means the Bond Indenture, the Bond Lease, and any and all other documents executed or delivered in connection with the issuance of the Bonds.

*"Bond Indenture"* means the Trust Indenture dated as of October 1, 2010, by and between the Authority, as issuer, and the Indenture Trustee, pursuant to which the Bonds were issued.

*"Bond Lease"* means that certain Lease Agreement dated as of October 1, 2010 between the Authority, as sublessor, and the Debtor, as sublessee, which was assigned by the Authority to the Bond Trustee.

*"Bond Lease Claim"* means the Claim of the Indenture Trustee against the Debtor with respect to the Bond Lease.

*"Bondholders"* means the holders, from time to time, of the beneficial interests in the outstanding Bonds.

*"Bondholders Committee"* means the unofficial, *ad hoc* committee of Bondholders.

*"Bondholders Committee Counsel"* means the law firm of Rumberger Kirk & Caldwell, P.A., as counsel for the Bondholders Committee

*"Bondholders Committee Substantial Contribution Payment"* means the sum of Three Hundred Fifty Thousand Dollars ($350,000.00) in Cash to be paid by the Debtor to the Bondholders Committee Counsel on the Effective Date from the Baptist Entities Plan Contribution in consideration for, among other things, their substantial contribution to the Debtor's Chapter 11 Case, which payment shall be made in accordance with Section III.B.2 of the Plan.

*"Bonds"* means those certain Revenue Bonds, Judson College Series 2010, dated as of October 1, 2010, issued for the benefit of the Debtor by the Authority pursuant to the Bond Indenture.

*"Business Day"* means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

4

*"Campus Property"* means the real and personal property that has been or is due to be conveyed to the Foundation pursuant to the terms of the Comprehensive Mediation Settlement Agreement, including any and all of the College's libraries, lecture halls, residence halls, student centers, alumnae facilities, dining halls, athletic facilities, president's home, clubhouses, maintenance facilities, and other real property and improvements thereon and thereto that were used in the College's educational operations, but excluding the Ancillary Real Estate.

*"Cash"* means cash and cash equivalents in U.S. dollars.

*"Cause of Action"* means any action, claim, cause of action, controversy, demand, right, action, remedy, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, arising before, on, or after the Petition Date and that are or may be pending or existing on the Effective Date against any Entity, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff or counterclaim and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim or cause of action pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any counterclaim or defense, including fraud, mistake, duress, usury, recoupment, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any equitable remedy, including any claim for equitable subordination, equitable disallowance, or unjust enrichment; and (f) any cause of action or claim arising under any state or foreign fraudulent transfer law.

*"Chapter 11 Case"* means Case No. 23-_____-___-11 under chapter 11 of the Bankruptcy Code pending for the Debtor in the Bankruptcy Court.

*"Claim"* means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code.

*"Claims Objection Deadline"* has the meaning set forth in Article VII.C.

*"Class"* means a class of Claims designated in Article III, pursuant to section 1123(a)(1) of the Bankruptcy Code.

*"College Accountants"* means any and all accountants and accounting firms that performed accounting work for the Debtor prior to the Petition Date, including without limitation, Jo Anne Morina CPA, Haynes Downard, LLP, and Brannum CPA.

*"Comprehensive Mediation Settlement"* means the comprehensive, global settlement agreement negotiated and agreed to by all the parties to the Mediation, including, without limitation, the Debtor, the Banks, the Indenture Trustee, the Consenting Bondholders, the Indemnity Claimants, and the Baptist Entities, the terms of which settlement are set forth in the Comprehensive Mediation Settlement Agreement.

*"Comprehensive Mediation Settlement Agreement"* means the Confidential Mediation Settlement Document dated as of March 24, 2023 by and among all of the Mediation Parties

5

documenting the Comprehensive Mediation Settlement, as the same has or may have been amended from time to time thereafter.

*"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

*"Confirmation Hearing"* means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

*"Confirmation Order"* means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and granting other related relief.

*"Consenting Bondholders"* means those Bondholders that are signatories to the Comprehensive Mediation Settlement and/or the Plan Support Agreement.

*"Consenting Creditors"* means, collectively, the Consenting Bondholders, the Banks, and the Indemnity Claimants.

*"Convention"* means the Alabama Baptist State Convention.

*"Debtor"* has the meaning specified in the Introduction hereto.

*"Debtor Released Parties"* means, collectively and individually, the Debtor, the Estate, the Representatives of the Debtor, including but not limited to its past and present officers and members of its Board of Trustees (but excluding the College Accountants), and any entities that have issued bonds for the benefit of the Debtor, including The Educational Building Authority of the City of Marion, Alabama, and successors and assigns.

*"Disallowed"* means, with respect to a Claim or portion thereof, that such Claim or portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of claim or request for payment of an Administrative Expense has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not listed in the Schedules and as to which no proof of claim or request for payment of an Administrative Expense has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Debtor or the Plan Trustee, as applicable, and the holder thereof, or (e) has been withdrawn by the holder thereof.

*"Disclosure Statement"* means that certain disclosure statement relating to the Plan, including all exhibits, appendices, and schedules thereto, as amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

*"Disputed"* means any Claim that is not Allowed or Disallowed.

*"Distribution"* means any distribution of (a) Cash or (b) other form of consideration, as the case may be, made to any holder of a Claim in accordance with and pursuant to the Plan.

6

*"Distribution Record Date"* means the Confirmation Date or such other date acceptable to the Debtor.

*"District Court"* means the United States District Court for the District of Southern Alabama.

*"Effective Date"* means the date selected by the Debtor, in consultation with counsel for the Indenture Trustee and the Banks, that is the first Business Day after the Confirmation Date on which date all conditions to the Effective Date specified in Article IX.A have been satisfied or waived in accordance with Article IX.B.

*"Entity"* means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

*"Estate"* means the estate created for the Debtor upon commencement of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

*"Estate Causes of Action"* means any and all Causes of Action that may be asserted by the Estate.

*"External Trust Interests"* means all beneficial and other interests of the Debtor in and to the External Trusts and any and all distributions therefrom.

*"External Trusts"* means certain trusts administered by third party trustees in which the Debtor holds or has held a beneficial interest and/or from which the Debtor historically received income or other distributions from time to time. A complete list of the External Trusts shall be submitted as part of the Plan Supplement.

*"FCB"* means First Cahawba Bank.

*"FCB Claim"* means the Claim of FCB for the outstanding FCB Loan.

*"FCB Loan"* means the line of credit made available by FCB to the Debtor that is evidenced by the FCB Promissory Note.

*"FCB Promissory Note"* means the Commercial Line of Credit and Note dated as of March 25, 2020 made by the Debtor to the order of FCB in the principal amount of $1,000,000.00, as the same has or may have been amended or modified from time to time thereafter.

*"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or (b) any appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, petitioned, or moved.

7

"*Foundation*" means the Judson College Foundation, an Alabama non-profit corporation.

"*Foundation UPMIFA Transfer*" means the amount of Restricted Funds to be paid to the Foundation pursuant to the UPMIFA Order.

"*General Administrative Expense*" means any Administrative Expense other than Professional Fees.

"*General Administrative Expense Bar Date*" means the first Business Day that is thirty (30) days after the notice of the Effective Date is filed with the Bankruptcy Court or such other date as may be established by order of the Bankruptcy Court.

"*General Unsecured Claim*" means any Claim against the Debtor that is not an Administrative Expense Claims, Priority Claim, Bond Lease Claim, Bank Claim, or Indemnity Claim.

"*Governmental Unit*" means any "governmental unit," as such term is defined in section 101(27) of the Bankruptcy Code.

"*Ground Lease*" means the lease dated as of October 1, 2010 between the Debtor, as lessor, and the Authority, as lessee, as the same has been or may have been amended from time to time.

"*Impaired*" means, with respect to (a) a Class or Claim, that such Class or Claim is "impaired" within the meaning of section 1124 of the Bankruptcy Code and (b) the holder of a Claim, that such Claim is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Indemnity Claimants*" means the defendants in the Mann Lawsuit that have asserted Indemnity Claims against the Debtor.

"*Indemnity Claims*" means the Claims of the Indemnity Claimants against the Debtor for indemnification, whether statutory, contractual or otherwise, of all claims, costs and expenses they have or may have arising from the Causes of Action asserted against them in the Mann Lawsuit.

"*Indenture Trustee*" means Regions Bank, in its capacity as trustee under the Bond Indenture.

"*Indenture Trustee Agreed Fee*" means the Cash distribution in the amount of Seven Hundred Thousand Dollars ($700,000.00) to be made to the Indenture Trustee on the Effective Date, pursuant to the Comprehensive Mediation Settlement, to be used by the Indenture Trustee to satisfy, in full or in part, its then outstanding fees and expenses to which it is entitled under the terms of the Bond Indenture, with any excess to be disbursed by the Indenture Trustee in accordance with the terms of the Bond Indenture.

"*Indenture Trustee Lawsuit*" means the case styled *Regions Bank as Indenture Trustee v. Judson College, et al.,* CV-2022-900040 filed in the Circuit Court of Perry County, Alabama.

"*Insurance Coverage Litigation*" means the case styled *Judson College, et al. v. Indian Harbor Insurance Co., et al.*, CV-2023-900035 filed in the Circuit Court of Perry County,

Alabama, and subsequently removed to the United States District Court for the Southern District of Alabama, Case No. 2:23-cv-00315.

*"Lien"* means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

*"Mann Lawsuit"* means the lawsuit styled *Mann et al. v. Dunkin et al.*, CV-2022-902060, filed and pending in the Circuit Court of Jefferson County, Alabama.

*"Marion Bank"* means Marion Bank & Trust.

*"Marion Bank Claim"* means the Claims of Marion Bank for the outstanding Marion Bank Loans.

*"Marion Bank Loans"* means the loans made by Marion Bank to the Debtor that are evidenced by the Marion Bank Promissory Notes.

*"Marion Bank Promissory Notes"* means, together, (1) the Promissory Note dated as of October 30, 2015 made by the Debtor to the order of Marion Bank in the principal amount of $3,100,000.00, and (2) the Promissory Note dated as of June 15, 2020 made by the Debtor to the order of Marion Bank in the principal amount of $325,600.00, in each case, as the same has or may have been amended or modified from time to time thereafter.

*"Mediation"* means the mediation among the Mediation Parties that occurred on January 17, 18, and 30, 2023, out of which the Mediation Parties negotiated and entered into the Comprehensive Mediation Settlement.

*"Mediation Parties"* means all the parties to the Mediation, including, without limitation, the Debtor, the Banks, the Indenture Trustee, the Consenting Bondholders, the Indemnity Claimants, and the Baptist Entities.

*"Mediator"* shall mean C. Edward Dobbs and his law firm, Parker Hudson Rainer & Dobbs LLP.

*"Net Cash Proceeds"* means, with respect to the sale or other liquidation of any Assets (including the litigation and/or compromise of any Unreleased Causes of Action), the gross cash proceeds from such sale or other liquidation of such Assets net of (i) any bona fide direct costs incurred in connection with such sale or liquidation, including any applicable transfer taxes or recording charges payable by the Debtor as a result of any gain recognized in connection with such sale, (ii) any fees or expenses of other lawyers or other professionals directly incurred in connection with the sale or other liquidation of such Assets, and (iii) any reasonable broker fees payable in connection with such sale to the extent previously approved by Final Order of the Bankruptcy Court.

*"Net External Trust Recoveries"* means, with respect to any Cash received on account of, or recovered or otherwise derived from, the Debtor's External Trust Interests, the gross amount of such Cash, *less* the fees, expenses, and other costs incurred by the Debtor and the Plan Trustee in receiving, recovering, or collecting such funds.

9

"*Net Remaining Restricted Funds*" means the Restricted Funds remaining on the Effective Date after payment of (i) all fees and expense permitted under the UPMIFA Order, (ii) all fees and expenses approved by order of the Bankruptcy Court, (iii) the Indenture Trustee Agreed Fee, and (iv) the funding of the Plan Professional Fee Reserve.

"*Net Retained Accountant Claim Recoveries*" means, with respect to any Cash received, recovered, or otherwise derived from or on account of the Retained Accountant Claims, the gross amount of such Cash, *less* the fees, expenses, and other costs incurred by the Debtor and the Plan Trustee in recovering or collecting such funds.

"*Other Assets*" means all Assets of the Debtor (including the Ancillary Real Estate), other than (1) the Restricted Funds, (2) the External Trusts, (3) the Retained Accountant Claims, (4) the Debtor's interests, if any, in the Baptist Entities Plan Contribution, and (5) the Revested Assets.

"*Person*" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other Entity.

"*Petition Date*" means January 8, 2024.

"*Plan*" has the meaning specified in the Introduction hereto.

"*Plan Procedures Order*" means an order entered by the Bankruptcy Court that, among other things, establishes procedures and deadlines with respect to the solicitation and tabulation of votes to accept or reject the Plan.

"*Plan Professional Fee Reserve*" means the escrow account to be established by the Debtor on the Effective Date, and administered thereafter by the Plan Trustee, in an amount equal to the aggregate amount of unpaid fees for all Professionals through the Effective Date, as estimated pursuant to Article II.

"*Plan Supplement*" means the compilation of documents (or forms thereof), schedules, and exhibits hereto to be filed with the Bankruptcy Court and any other documents, agreements, schedules, and exhibits, specified herein, provided that the Debtor may amend such Plan Supplement at any time prior to the Effective Date, subject to the written approval of the Debtor, the Indenture Trustee, counsel for the Bondholders Committee, and the Banks. The Plan Supplement shall include (a) the identification of the Plan Trustee; (b) a description of any additional Retained Causes of Action not otherwise identified herein; (c) the Plan Trust Agreement; (d) the list of the External Trusts; (e) the revised Articles and Bylaws for the Reorganized Debtor; and (f) the list of Archival and Historical Items.

"*Plan Support Agreement*" means the Plan Support Agreement dated December 15, 2023, by and among all of the Mediation Parties in accordance with and as contemplated by the Comprehensive Mediation Settlement.

"*Plan Trust*" means that certain trust established pursuant to the terms set forth in Section IV.D hereof.

*"Plan Trust Agreement"* has the meaning set forth in Section IV.D. The Plan Trust Agreement shall be filed with the Bankruptcy Court as part of the Plan Supplement.

*"Plan Trust Assets"* means all Assets (including the Plan Trust Causes of Action and Other Assets), but specifically excluding (a) the portion of the Net Remaining Restricted Funds paid to the Banks on the Effective Date pursuant to the Plan, (b) the Revested Assets, and (c) the Released Causes of Action.

*"Plan Trust Causes of Action"* means all Estate Causes of Action excluding (1) any and all Released Causes of Action and (2) any and all Estate Causes of Action that are Revested Assets.

*"Plan Trust Oversight Committee"* means the committee established on the Effective Date to oversee the Plan Trust and the Plan Trustee pursuant to Section IV.D of the Plan and the Plan Trust Agreement.

*"Plan Trustee"* means the trustee appointed for the Plan Trust in accordance with Section IV.D of this Plan. The initial Plan Trustee shall be (i) disclosed in the Plan Supplement, (ii) acceptable to the Debtor, the Indenture Trustee, counsel for the Bondholders Committee, and the Banks, and (iii) approved by the Bankruptcy Court in connection with confirmation of the Plan.

*"Priority Non-Tax Claim"* means any Claim against the Debtor entitled to priority in payment as specified in sections 507(a)(3), (4), (5), (6), (7) and (9) of the Bankruptcy Code.

*"Priority Tax Claim"* means any Claim of a Governmental Unit against the Debtor entitled to priority pursuant to section 502(i) or 507(a)(8) of the Bankruptcy Code.

*"Pro Rata"* means, (a) with respect to Allowed Claims in the same Class, proportional to the ratio of the amount of such Allowed Claim to the amount of all Allowed Claims in such Class, and (b) with respect to Allowed Claims in one or more Classes, proportional to the ratio of the amount of such Allowed Claim to the aggregate amount of all Allowed Claims in all such Classes.

*"Professional"* means any professional of the Debtor, or such other professional that is, by Final Order of the Bankruptcy Court: (a) employed for legal, financial advisory, accounting, or other professional services during the Chapter 11 Case pursuant to section 327 of the Bankruptcy Code and to be compensated and reimbursed therefor in accordance with sections 327, 328, 329, 330, and/or 331 of the Bankruptcy Code; (b) whose fees and expenses the Debtor or the Plan Trustee is authorized to pay pursuant to an order entered by the Bankruptcy Court under section 363 of the Bankruptcy Code; or (c) allowed compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code upon a motion on notice.

*"Professional Fees"* means the accrued, contingent, and/or unpaid compensation for services rendered (including hourly, transaction, and success fees), and reimbursement for expenses incurred, by Professionals, that: (a) are awardable and allowable pursuant to sections 327, 328, 329, 330, 331, and/or 503(b)(4) of the Bankruptcy Code or otherwise rendered allowable prior to the Effective Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been previously paid (regardless of whether a fee application has been filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Professional. To the extent that any amount of the foregoing compensation or reimbursement is

11

denied or reduced by Final Order of the Bankruptcy Court or any other court of competent jurisdiction, such amount shall no longer constitute Professional Fees.

*"Released Causes of Action"* means all Estate Causes of Action that the Debtor has waived or released pursuant to this Plan or pursuant to the Comprehensive Mediation Settlement Agreement.

*"Released Parties"* means, collectively and individually, (a) the Banks, (b) the Indenture Trustee, (c) the Bondholders, (d) the Indemnity Claimants, (e) the Baptist Entities, (f) the External Trusts for which the Baptist Foundation is or has served as trustee, (g) Philadelphia Indemnity Insurance Company solely as issuer of that certain Flexi Plus Five Policy issued to the State Board of Missions of the Alabama Baptist Convention, Policy Number PHSD1683361 effective for the policy period from January 1, 2022 through January 1, 2023, (h) each of the Representatives of each of the foregoing (in each case, solely in their capacities as such), (i) the Foundation (excluding any claims the Debtor has against the Foundation for unreimbursed expense advances as described in Section IX.A.5 hereof, which claims shall not be released),(j) the Mediator, and (k) the Debtor's Representatives solely in their capacities as such; provided, however, that notwithstanding the foregoing, the following parties are expressly not Released Parties hereunder: (w) the College Accountants; (x) the External Trusts other than those for which the Baptist Foundation is or has served as trustee; (y) the trustees of the External Trusts other than the Baptist Foundation; and (z) any issuers of any past or current insurance policies that provide or may have provided coverage of any kind for the benefit of the Debtor and/or any of the Indemnity Claimants, except for Philadelphia Indemnity Insurance Company solely as issuer of that certain Flexi Plus Five Policy issued to the State Board of Missions of the Alabama Baptist Convention, Policy Number PHSD1683361 effective for the policy period from January 1, 2022 through January 1, 2023.

*"Releases"* shall refer to the release provisions contained in Article VIII of this Plan, which releases are a material part of both the Comprehensive Mediation Settlement and this Plan.

*"Reorganized Debtor"* means the Debtor as reorganized pursuant to the terms of this Plan, effective as of the Effective Date.

*"Representatives"* means, with respect to any Person, any past or present officer, trustee, director, principal, partner, limited partner, general partner, shareholder, member, manager, management company, investment manager, affiliate, employee, agent, attorney, advisor, investment banker, financial advisor, restructuring advisor, consultant, accountant, or other Professional of such entity or any of the foregoing, and each of their successors, assigns, and predecessors.

*"Restricted Funds"* means those endowment funds of the Debtor that were gifted to the Debtor subject to donor-imposed restrictions contained in the applicable gift instruments on the use of such funds, which Restricted Funds were the subject of the UPMIFA Action and are conditionally available to fund this Plan pursuant to the terms of the UPMIFA Order.

*"Retained Accountant Claims"* means any and all Estate Causes of Action against any of the College Accountants.

*"Revested Assets"* shall mean the Assets that shall re-vest in the Reorganized Debtor as of the Effective Date, including (1) any and all trademarks, tradenames, copyrights, and other intellectual property rights used or usable in connection with the historic, educational operations of the Debtor, including all rights with respect to the name "Judson College," (2) the Archival and Historical Items, (3) any of the Campus Property that, for any reason, was not duly conveyed to the Foundation prior to the Petition Date, and (4) the Revested Causes of Action.

*"Revested Causes of Action"* means the Causes of Action of the Debtor that are to remain titled with, and vest in, the Reorganized Debtor on the Effective Date, the list of which Causes of Action shall be part of the Plan Supplement and shall be prepared by the Debtor and subject to the approval of the Banks and counsel for the Bondholders, which approval shall not be unreasonably withheld. Without limitation, the Revested Causes of Action shall include (1) any and all Causes of Action against the Foundation and (2) any and all Causes of Action regarding or relating to the Campus Property.

*"Secured Claim"* means any Claim to the extent and only to the extent that Claim is (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by Final Order of the Bankruptcy Court, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan or Final Order of the Bankruptcy Court as a Secured Claim.

*"State Board of Missions"* means the State Board of Missions of the Alabama Baptist State Convention.

*"Statutory Fees"* has the meaning set forth in Article XII.C.

*"Unimpaired"* means, with respect to a Class, Claim, Interest, or a holder of a Claim, that such Class, Claim, or holder is not Impaired.

*"Unreleased Causes of Action"* means any and all Estate Causes of Action, other than the Released Causes of Action. Without limitation of the foregoing, "Unreleased Causes of Action" shall include (A) any and all Causes of Action of the Debtor and its Estate against (i) the External Trusts and the trustees of such External Trusts (including, without limitation, Trustmark Bank as trustee and Robertson Banking Company as trustee), other than those External Trusts for which any of the Baptist Entities serves as trustee (which shall be released effective on the Plan Effective Date as set forth above), and (ii) the Debtor's insurers (including without limitation Indian Harbor Insurance Company or AXA XL), including, without limitation, all Causes of Action asserted in the Insurance Coverage Litigation, and (B) the Retained Accountant Claims.

*"UPMIFA"* means the Alabama Uniform Prudent Management of Institutional Funds Act, codified at Alabama Code § § 19-3C-1, *et al.*

*"UPMIFA Action"* means the action styled *In re Judson College, Inc.*, Case No. CV-2023-900034.00, filed in the Circuit Court of Perry County, Alabama.

"*UPMIFA Order*" means the *Order Granting Application of Judson College Pursuant to Alabama Code 19-3C-6* entered on August 4, 2023, in the UPMIFA Action.

"*Voting Deadline*" means _____ at 4:00 p.m. (CT).

"*Voting Record Date*" means _____, 2023.

"*West Alabama Bank*" means West Alabama Bank & Trust.

"*West Alabama Bank Claim*" means the Claim of West Alabama Bank for the West Alabama Bank Loan.

"*West Alabama Bank Loan*" means the loan made by West Alabama Bank to the Debtor that is evidenced by the West Alabama Bank Promissory Note.

"*West Alabama Bank Promissory Note*" means the Renewal Promissory Note dated as of February 21, 2021 made by the Debtor to the order of West Alabama Bank in the principal amount of $1,726,350.00, as the same has or may have been amended or modified from time to time thereafter.

B.    *Rules of Interpretation*

For purposes of the Plan and unless otherwise specified herein: (i) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (ii) each pronoun stated in the masculine, feminine, or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (iii) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (iv) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (v) all references to articles or Articles are references to the Articles hereof; (vi) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (vii) any reference to an Entity as a holder of a Claim includes that Entity's successors and assigns; (viii) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, restated, modified, or supplemented; (ix) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (x) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (xi) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time and as applicable to the Chapter 11 Case; (xii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (xiii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (xiv) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or

14

the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.  *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.  *Governing Law*

Unless federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, and unless specifically stated otherwise, the laws of the State of Alabama, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.  *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## ADMINISTRATIVE EXPENSES AND
## OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.  *General Administrative Expenses*

Except to the extent that a holder of an Allowed General Administrative Expense Claim agrees to different treatment of such General Administrative Expense Claim, the holder of such Allowed General Administrative Expense Claim shall receive Cash in an amount equal to such Allowed General Administrative Expense Claim on (i) the Effective Date or (ii) if such Claim is not an Allowed General Administrative Expense Claim as of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes an Allowed General Administrative Expense Claim or as soon thereafter as is reasonably practicable. To the extent a General Administrative Expense Claim has not been Allowed as of the Effective Date of the Plan, the Plan Trustee shall reserve sufficient amounts from the Plan Trust Assets for the resolution of such Claim.

Case 24-20004   Doc 5   Filed 01/08/24   Entered 01/08/24 17:55:56   Desc Main
Document      Page 19 of 50

B.    *General Administrative Expense Bar Date*

Except as provided below for Professionals requesting compensation or reimbursement for Claims for Professional Fees, requests for payment of General Administrative Expenses must be filed no later than thirty (30) days after the notice of the Effective Date is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court. Holders of General Administrative Expenses who are required to file a request for payment of General Administrative Expense and who do not file such request by the General Administrative Expense Bar Date, shall be forever barred from asserting such General Administrative Expense against the Debtor or the Debtor's property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such General Administrative Expense.

C.    *Professional Fees*

1.    Final Fee Applications

All final requests for payment of Professional Fees incurred prior to the Effective Date must be filed with the Bankruptcy Court and all other parties that have requested notice in the Chapter 11 Case by no later than forty-five (45) days after the Effective Date. Objections to Professional Fees must be filed with the Bankruptcy Court and served on the applicable Professional no later than seventy-five (75) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Professional Fees shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in full in Cash from the Plan Professional Fee Reserve; *provided, however,* that if the funds in the Plan Professional Fee Reserve are insufficient to pay the full Allowed amounts of the Professional Fees, the Plan Trustee shall promptly pay any remaining Allowed amounts from Cash on hand in the Plan Trust.

2.    Plan Professional Fee Reserve

Prior to the Effective Date, the Debtor shall establish a Plan Professional Fee Reserve in an amount equal to all asserted Claims for Professional Fees accrued and unpaid through the Effective Date (including, for the avoidance of doubt, any reasonable estimates for unbilled amounts payable by the Debtor), which may be maintained in an interest-bearing account. The Plan Professional Fee Reserve shall be administered by the Plan Trustee in accordance with the Plan Trust Agreement; *provided, however*, amounts held in the Plan Professional Fee Reserve shall not constitute property of the Plan Trust. In the event there is a remaining balance in the Plan Professional Fee Reserve following payment to all holders of Allowed Claims for Professional Fees under the Plan, any such amounts shall be distributed to holders of Allowed Claims in accordance with the terms of the Plan.

Professionals shall estimate their unpaid Claims for Professional Fees incurred through the projected Effective Date and shall deliver such estimate to counsel for the Debtor no later than forty-eight (48) hours before the projected Effective Date; *provided, however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of any

Professional's final request for payment of filed Professional Fee Claims. To the extent that Allowed Professional Fee Claims exceed the amount of any estimate, the Plan Professional Fee Reserve shall be supplemented to account for such amount, with such supplemental funds being taken from proceeds of the Plan Trust Assets. If a Professional does not provide an estimate, the Debtor shall estimate the unpaid and unbilled fees and expenses of such Professional for the purpose of funding the Plan Professional Fee Reserve on the Effective Date.

D.      *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, as determined by the Debtor, either (a) on, or as soon thereafter as is reasonably practicable, the Effective Date or, if such Allowed Priority Tax Claim is not allowed as of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Effective Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim plus interest at a rate determined in accordance with section 511 of the Bankruptcy Code.

To the extent not previously set, the Confirmation Order shall establish a deadline for filing proofs of claim or requests for payment of Priority Tax Claims which must be filed no later than thirty (30) days after the notice of the Effective Date is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court. To the extent a Priority Tax Claim has not been Allowed as of the Effective Date of the Plan, the Plan Trustee shall reserve from the Plan Trust Assets a sufficient amount for the resolution of such Claim. In the event there is a remaining balance in such reserve following payment in full of all Allowed Priority Tax Claims under the Plan, any such amounts shall be distributed Allowed Claims in accordance with the terms of the Plan.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS

A.      *Classification of Claims*

Except for Administrative Expenses and Priority Tax Claims, Claims are classified in the Classes set forth in this Article III. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class. To the extent a specified Class ultimately does not include any Allowed Claims, then such Class shall be deemed not to exist. To the extent that a particular Claim does not qualify within the description of any Class and the Plan otherwise fails to classify such Claim or specify its treatment, then such Claim shall be deemed to be part of Class 5; *provided*, *however*, that all rights of the holder(s) of such Claim(s), including the right to object to such classification, and the Debtor's rights and defenses thereto, are reserved.

17

Pursuant to section 1122 of the Bankruptcy Code, the classification of Claims is as follows:

| Class | Claims | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to accept |
| 2 | Bond Lease Claim | Impaired | Entitled to vote |
| 3 | Bank Claims | Impaired | Entitled to vote |
| 4 | Indemnity Claims | Impaired | Entitled to vote |
| 5 | General Unsecured Claims | Impaired | Entitled to vote |

B.   *Treatment of Claims and Interests*

1.   Class 1 – Priority Non-Tax Claims

a.   *Classification*: Class 1 consists of all Allowed Priority Non-Tax Claims.

b.   *Treatment*: Except to the extent previously satisfied during the Chapter 11 Case or that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment on account of such Claim, each such holder, in full satisfaction, settlement, release, and discharge of and in exchange for such Priority Non-Tax Claim, shall receive Cash in the amount equal to 100% of the Allowed amount of such Priority Non-Tax Claim, on or as soon as reasonably practicable after the latest of (x) the Effective Date, (y) the date such Claim becomes Allowed, and (z) the date such Claim becomes due and payable in the ordinary course of business. To the extent a Priority Non-Tax Claim has not been Allowed as of the Effective Date of the Plan, the Plan Trustee shall reserve sufficient amounts from the Plan Trust Assets for the resolution of such Claim. In the event there is a remaining balance in such reserve following payment in full of all Allowed Priority Non-Tax Claims under the Plan, any such amounts shall be distributed Pro Rata to holders of Allowed Claims in Classes 2, 3, and 5 as provided below.

c.   *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

2.   Class 2 – Bond Lease Claim

a.   *Classification*: Class 2 consists of the Bond Lease Claim that remains unpaid and outstanding as of the Effective Date.

b.  *Allowance*: The Bond Lease Claim shall be Allowed in the aggregate principal amount of $9,030,000.00, plus any prepetition interest, reasonable fees, costs, expenses, and other amounts accrued prior to the Petition Date pursuant to the Bond Lease, the Bond Indenture, and any other Bond Documents. Neither the Indenture Trustee nor any of the Bondholders shall be required to file proofs of Claim on account of the Bond Lease Claim or the Bonds.

c.  *Treatment*: Commencing on the Effective Date, the Indenture Trustee, as holder of Bond Lease Claim, shall receive, for the benefit of the Bondholders, in full and final satisfaction, settlement, and release of, and in exchange for, the Bond Lease Claim and any and all Claims of any and all of the Bondholders, the following Distributions:

(i)  From the Restricted Funds, (A) the Indenture Trustee Agreed Fee, which shall be paid by the Debtor to the Indenture Trustee, plus (B) seventy-five percent (75.0%) of the Net Remaining Restricted Funds, which funds shall be paid by the Debtor to the Plan Trustee for the benefit of the holder of the Bond Lease Claim;

(ii)  Seventy-five percent (75.0%) of the Net External Trust Recoveries;

(iii)  One hundred percent (100.0%) of the Net Retained Accountant Claim Recoveries;

(iv)  From the Baptist Entities Plan Contribution paid by the Baptist Entities to the Debtor, the Debtor shall distribute Four Hundred Thousand Dollars ($400,000) to the Indenture Trustee, with the other Three Hundred Fifty Thousand Dollars ($350,000) to be distributed by the Debtor to the Bondholders Committee Counsel in full satisfaction of the Bondholders Committee Substantial Contribution Payment; and

(v)  All Allowed Class 2 Claims, Allowed Class 3 Claims, and Allowed Class 5 Claims shall receive their respective Pro Rata share of the Net Cash Proceeds derived from the Other Assets that remain after payment of all Allowed Administrative Expenses, Allowed Professional Fees, Allowed Priority Tax Claims, and Allowed Non-Priority Tax Claims.

(vi)  Notwithstanding anything to the contrary herein, all fees and expenses to which the Indenture Trustee shall be entitled for compensation and reimbursement under the Bond Documents shall be payable solely out of the Distributions made under the Plan on account of the Bond Lease Claim and otherwise as provided in the Bond Documents.

19

d.    *Voting*: Class 2 is Impaired under the Plan. With respect to the Bond transaction, the only Allowed Claim against the Debtor is the Bond Lease Claim held by the Indenture Trustee, as the Bonds were issued by the Authority and the Bondholders do not hold any direct Claim against the Debtor under, relating to, or on account of the Bonds. Recognizing that the Bondholders hold the beneficial interests in the Bond Lease Claim, the Plan Procedures Order provides that the Bondholders as of the Voting Record Date shall be entitled to vote to accept or reject the Plan on behalf of Class 2. As more fully set forth in the Plan Procedures Order, for voting purposes only, the aggregate amount of Allowed Class 2 Claims shall be deemed to be $9,030,000, the current outstanding principal amount of the Bonds, and each Bondholder as of the Voting Record Date shall be authorized and able to vote the outstanding principal amount of the Bonds that such Bondholder beneficially holds as of the Voting Record Date. The Indenture Trustee shall not have the right to cast a Ballot on behalf of the Bond Lease Claim.

3.    Class 3 – The Bank Claims

a.    *Classification*: Class 3 consists of the Allowed Bank Claims.

b.    *Allowance*:

    (i)    The FCB Claim shall be Allowed in the principal amount of $921,790.47, plus any prepetition interest, reasonable fees, costs, expenses, and other amounts accrued prior to the Petition Date pursuant to the FCB loan documents. FCB shall not be required to file a proof of Claim on account of the FCB Claim.

    (ii)    The Marion Bank Claim shall be Allowed in the principal amount of $2,534,484.41, plus any prepetition interest, reasonable fees, costs, expenses, and other amounts accrued prior to the Petition Date pursuant to the Marion Bank loan documents. Marion Bank shall not be required to file a proof of Claim on account of the Marion Bank Claim.

    (iii)    The West Alabama Bank Claim shall be Allowed in the principal amount of $1,610,207.19, plus any prepetition interest, reasonable fees, costs, expenses, and other amounts accrued prior to the Petition Date pursuant to the West Alabama Bank loan documents. West Alabama Bank shall not be required to file a proof of Claim on account of the West Alabama Bank Claim.

c.    *Treatment*: Commencing on the Effective Date, each of the Banks shall receive on account of, and in full and final satisfaction, settlement, and release of, their Allowed Class 3 Claims, the following Distributions:

    (i)    their respective Pro Rata share of twenty-five percent (25.0%) of the Net Remaining Restricted Funds;

<blockquote>
(ii)    their respective Pro Rata share of twenty-five percent (25.0%) of the Net External Trust Recoveries; and

(iii)   All Allowed Class 2 Claims, Allowed Class 3 Claims, and Allowed Class 5 Claims shall receive their respective Pro Rata share of the Net Cash Proceeds derived from the Other Assets that remain after payment of all Allowed Administrative Expenses, Allowed Professional Fees, Allowed Priority Tax Claims, and Allowed Non-Priority Tax Claims.
</blockquote>

d.    *Voting*: Class 3 is Impaired under the Plan. Therefore, holders of Claims in Class 3 that are Allowed or temporarily Allowed for voting purposes are entitled to vote to accept or reject the Plan.

4.    Class 4 – Indemnity Claims

a.    *Classification*: Class 4 consists of the Allowed Indemnity Claims.

b.    *Treatment*: Pursuant to the Comprehensive Mediation Settlement Agreement, each holder of an Allowed Indemnity Claim has agreed to, and shall waive and release, all Indemnity Claims he, she, or it have or may have against the Debtor, as of the Effective Date, in consideration for the Releases under this Plan and under the Comprehensive Mediation Settlement Agreement.

c.    *Voting*: Class 4 is Impaired under the Plan. Therefore, holders of Indemnity Claims in Class 4 that are Allowed or temporarily Allowed for voting purposes are entitled to vote to accept or reject the Plan. For voting purposes only, each Indemnity Claimant asserting an Indemnity Claim shall be deemed to hold an Allowed Indemnity Claim equal to $1.00.

5.    Class 5 – General Unsecured Claims

a.    *Classification*: Class 5 consists of all Allowed General Unsecured Claims.

b.    *Treatment*: All Allowed Class 2 Claims, Allowed Class 3 Claims, and Allowed Class 5 Claims shall receive their respective Pro Rata share of the Net Cash Proceeds derived from the Other Assets that remain after payment of all Allowed Administrative Expenses, Allowed Professional Fees, Allowed Priority Tax Claims, and Allowed Non-Priority Tax Claims.

c.    *Voting*: To the extent there are any Allowed Class 5 Claims, Class 5 is Impaired under the Plan. Therefore, holders of Claims in Class 5 that are Allowed or temporarily Allowed for voting purposes are entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect (i) the Debtor's or the Plan Trustee's rights and defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, any such Unimpaired Claims or (ii) the rights and defenses of any holder of Unimpaired Claims in respect of its Unimpaired Claims. Without limiting the generality of the foregoing, the Debtor reserves the right to cure any past default or any failure to satisfy any condition that resulted in the material modification of its liabilities related to such Unimpaired Claim, whether occurring prior to or after the Petition Date and to reinstate the obligations related to any Unimpaired Claim as they existed prior to default, acceleration or the occurrence of, or failure to satisfy, any condition that resulted in the material modification of their liabilities related to such Unimpaired Claim.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

A.    *Voting Classes*

Classes 2, 3, 4, and 5 are Impaired under the Plan and, therefore, holders of Claims in such Classes are entitled to vote to accept or reject the Plan.

An Impaired Class of Claims shall be deemed to have accepted the Plan if, not counting any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (i) holders of at least two-thirds in amount of the Claims that are Allowed or temporarily Allowed for voting purposes held by holders who actually voted in such Class have voted to accept the Plan, and (ii) holders of more than one-half in number of the Claims that are Allowed or temporarily Allowed for voting purposes held by holders who actually voted in such Class have voted to accept the Plan. If no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

B.    *Presumed Acceptance of the Plan*

Class 1 is Unimpaired under the Plan. Holders of Claims in such Class are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.    *Non-Consensual Confirmation*

Classes 2, 3, 4, and 5 are Impaired under the Plan. Should any of those Classes vote to reject the Plan, the Debtor will request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to such Class and any other class that is entitled to vote and rejects the Plan. The Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan or any document in the Plan Supplement, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

D.    *Elimination of Vacant Classes*

Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims*

As discussed in detail in the Disclosure Statement and as otherwise provided herein and the Comprehensive Mediation Settlement Agreement, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, and all distributions made to holders of Allowed Claims in any Class in accordance with the Plan are intended to be, and shall be, final.  In accordance with the terms of the Comprehensive Mediation Settlement Agreement, upon Confirmation of the Plan, (a) the Bondholders Committee Counsel shall be Allowed an Administrative Claim in the amount of the Bondholders Committee Substantial Contribution Payment, which Claim shall be payable solely from the proceeds of the Baptist Entities Plan Contribution in accordance with the terms of this Plan, and (b) the Indenture Trustee shall be Allowed an Administrative Claim in the amount of the Indenture Trustee Agreed Fee, which claim shall be payable solely from the Restricted Funds in accordance with the terms of this Plan.

B.    *Sources of Cash for Plan Distributions*

The Debtor shall fund Distributions under the Plan with: (a) Cash on hand; (b) the Restricted Funds, as made available to fund the Plan pursuant to the UPMIFA Order; (c) the Baptist Entities Plan Contribution; and (d) all other proceeds, if any, generated from the liquidation of the Plan Trust Assets. Notwithstanding anything herein to the contrary, the Plan Trustee shall fully fund (i) the Professional Fees Reserve and (ii) any other reserves contemplated by the Plan or the Plan Trust Agreement prior to making any distributions of Plan Trust Assets under the terms of the Plan.

On the Effective Date, from the Restricted Funds, the Debtor shall (a) deliver Cash in the amount of the Plan Professional Fee Reserve to the Plan Trustee to be held in escrow per the terms

of this Plan, (b) pay the Indenture Trustee Agreed Fee in Cash to the Indenture Trustee, and (c) disburse the Net Remaining Restricted Funds in Cash in accordance with the terms of this Plan (i) to the Plan Trust for the benefit of the holder of the Allowed Class 2 Claim and (ii) directly to the holders of Allowed Class 3 Claims.

With respect to the Baptist Entities Plan Contribution, the Baptist Entities Plan Contribution shall be made on the Effective Date by the Baptist Entities not only in consideration of the Releases of the Released Causes of Action against the Baptist Entities pursuant to the Comprehensive Mediation Settlement, but also in consideration of the releases of the Released Causes of Action against the Debtor and the Debtor's Representatives (including the Indemnity Claimants) that are set forth in Article VIII of this Plan.

C.    *Continued Corporate Existence; Vesting of Revested Assets*

On and after the Effective Date, subject to the requirements of the Plan, the Debtor will continue to exist as the Reorganized Debtor and shall retain all of its powers under applicable non-bankruptcy law, subject to the terms and conditions of its amended bylaws and charter, and without prejudice to any right to amend its constituent documents, dissolve, merge, or convert into another form of business entity, or to alter or terminate its existence. On the Effective Date, all of the Revested Assets shall vest in the Reorganized Debtor, as reorganized under this Plan, free and clear of all Liens, Claims, charges, interests, and encumbrances.

D.    *Establishment of Plan Trust*

On the Effective Date, the Debtor shall establish a Plan Trust, which shall, among other things and as more fully set forth in the Plan Trust Agreement: (i) administer the resolution, asset administration, and distribution process for Allowed Claims, (ii) prosecute the Plan Trust Causes of Action, and (iii) liquidate any Plan Trust Assets.

Under section 1141(b) of the Bankruptcy Code, the Plan Trust Assets shall be assigned, transferred, and vest in the Plan Trust upon the occurrence of the Effective Date free and clear of all Claims, Liens and interests. The Plan Trust shall qualify as a liquidating trust as described in Treasury Regulation section 301.7701-4(d) and shall be treated as a grantor trust for United States federal income tax purposes.

The Plan Trust Agreement shall be in form and substance satisfactory to the Debtor, the Indenture Trustee, counsel for the Bondholders Committee, and the Banks. The operations of the Plan Trust shall be managed by the Plan Trustee, subject to the oversight and direction of the Plan Trust Oversight Committee. Subject to the approval of the Plan Trust Oversight Committee, the Plan Trustee alone shall manage the day-to-day operations of the Plan Trust, including, without limitation, liquidating the assets of the Plan Trust, appearing as a party in interest, prosecuting the Plan Trust Causes of Action, prosecuting objections to, settling or otherwise resolving Claims (other than Claims Allowed under the Plan), calculating distributions, paying taxes and such other matters as more particularly described in the Plan Trust Agreement. Notwithstanding anything herein to the contrary, the Plan Trustee shall be responsible for making distributions from the Plan Trust to Holders of Allowed Claims in accordance with the terms of the Plan. Expenses and fees of the Plan Trust, including the expenses of the Plan Trustee and its representatives and

24

professionals, will constitute expenses payable from Plan Trust Assets in accordance with the Plan Trust Agreement. No Plan Trust Assets that are entitled to be distributed on account of Bank Claims or General Unsecured Claims shall be used to investigate or pursue Retained Accountant Claims.

As of the Effective Date, the Plan Trustee shall have those powers, duties, and responsibilities as set forth in the Plan Trust Agreement.

The Bankruptcy Court and the District Court shall retain jurisdiction to administer the Plan Trust Assets.

The Plan Trustee may be removed by the Bankruptcy Court upon application by any creditor or party-in-interest for good cause shown. In the event of the resignation, removal, death, or incapacity of the Plan Trustee, the Plan Trust Oversight Committee shall appoint another Person to become Plan Trustee and shall promptly thereafter file notice of the appointment of such successor Plan Trustee with the Bankruptcy Court. Any successor Plan Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor.

No recourse will ever be had, directly or indirectly, against the Plan Trustee, the Plan Trust, the Plan Trust Oversight Committee, their respective officers, directors, employees, members, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Trust under this Plan or by reason of the creation of any indebtedness by the Plan Trust or the Plan Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Plan Trust Assets. The Plan Trustee shall not be deemed to be the agent for any holder of a Claim in connection with Distributions made under this Plan. The Plan Trust and the Plan Trustee, and their respective officers, directors, employees, members, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do, hereunder in good faith and in the exercise of their sound judgment; *provided, however*, that this section will not apply to any gross negligence or willful misconduct by the Plan Trust, the Plan Trustee, or their respective officers, directors, employees, professionals, representatives, agents, successors or assigns.

To the extent not set forth in this Plan, the composition, governance, powers, and duties of the Plan Trust Oversight Committee with respect to the Plan Trust shall be set forth in the Plan Trust Agreement.

E.    *Corporate Action*

On the Effective Date, all matters under the Plan involving or requiring action of the trustees, directors, or officers of the Debtor, including, but not limited to, actions requiring a vote or other approval of the board of trustees or any of the officers of the Debtor or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the

Effective Date, without any further action by the Bankruptcy Court or the trustees, directors, or officers of the Debtor.

F.    *Closing of the Chapter 11 Case*

As soon as practicable after the Plan Trust exhausts substantially all of the Plan Trust Assets by making the final distributions under the Plan, the Plan Trustee shall, at the expense of the Plan Trust, (a) provide for the retention and storage of the Debtor's books and records that shall have been delivered to or created by the Plan Trustee until such time as all such books and records are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books and records are being stored, (b) file a motion for entry of a final decree closing the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules and stating that the assets of the Plan Trust have been exhausted and final distributions have been made under the Plan, (c) file any necessary paperwork in the appropriate jurisdictions to effectuate the dissolution of the Plan Trust in accordance with the laws of such jurisdiction, and (d) resign as the Plan Trustee. Upon the Bankruptcy Court's entry of a Final Order granting the motion described in clause (b) of the preceding sentence, the Plan Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Trust or payments to be made in connection therewith, and the Chapter 11 Case shall be closed on the date that the Bankruptcy Court has entered such Final Order.

Notwithstanding the immediately preceding paragraph, if the Plan Trustee deems it appropriate and has the approval of the Plan Trust Oversight Committee, the Plan Trustee may seek authority from the Bankruptcy Court to close the Chapter 11 Case and dissolve the Plan Trust prior to all final Distributions having been made under the Plan.

G.    *Costs and Expenses of the Plan Trustee*

All Plan Trustee fees and expenses shall be the responsibility of and paid by the Plan Trustee from the Plan Trust Assets, without further notice to holders of Claims or approval of the Bankruptcy Court.

H.    *Cancellation of Loans, Securities and Agreements*

Except as otherwise provided in the Plan, on the Effective Date: (i) the Bond Documents, the Bonds, the Bank Loan Documents, and any other certificate, note, purchase right, option, warrant, bond, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of the Debtor giving rise to any Claim, shall be deemed cancelled and surrendered as to the Debtor without any need for further action or approval of the Bankruptcy Court or any holder thereof or any other person or entity, and the Debtor shall not have any continuing obligations thereunder or in any way related thereto; and (ii) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation, or similar documents governing the certificates, notes, purchase rights, options, warrants, bonds, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be deemed satisfied in full and released without any need for further action or approval of the Bankruptcy Court or any holder thereof or

26

any other person or entity; *provided*, *however*, that notwithstanding the occurrence of the Confirmation Date or the Effective Date, any such agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of allowing holders to receive distributions under the Plan; *provided further* that the Bank Loan Documents, the Bonds, and the Bond Documents shall continue in effect with respect to any obligations thereunder governing the relationships among the Banks (with respect to the Bank Loan Documents) and the relationships among the Indenture Trustee and the Bondholders (with respect to the Bond Documents).

I. *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Trustee is authorized to, and may issue, execute, deliver, file, or record, such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

J. *Section 1146 Exemption*

To the maximum extent permitted pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, sales and use taxes, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

K. *Retained Claims*

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Plan Trust Causes of Action preserved pursuant to this Article V.K that the Debtor may hold against any Person shall be transferred to and vest the Plan Trust upon the occurrence of the Effective Date. Except as otherwise provided in the Plan, the Plan Trustee, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Plan Trust Causes of Action. The Plan Trustee with the approval of the Plan Trust Oversight Committee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Plan Trust Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court, except for as otherwise expressly set forth in the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Revested Causes of Action preserved pursuant to this Article V.K that the Debtor may hold against any Person shall be transferred to and revest in the Reorganized Debtor upon the occurrence of the Effective Date. Except as otherwise provided in the Plan, the Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Revested Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to

determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Revested Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court, except for as otherwise expressly set forth in the Plan.

Unless any Estate Causes of Action are expressly waived, relinquished, transferred, exculpated, released, compromised, or settled in this Plan, or the Confirmation Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor and the Plan Trustee shall retain and may (but are not required to) enforce all rights to commence and pursue any and all Revested Causes of Action and Plan Trust Causes of Action, respectively, whether arising before or after the Petition Date, and the Reorganized Debtor's and the Plan Trustee's rights to commence, prosecute or settle such Revested Causes of Action and Plan Trust Causes of Action, respectively, shall be preserved notwithstanding the occurrence of the Effective Date. Other than the Released Causes of Action, no Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Confirmation Order to any Estate Cause of Action against them as any indication that the Reorganized Debtor or the Plan Trustee will not pursue any and all available Estate Causes of Action against them. The Reorganized Debtor and the Plan Trustee expressly reserve all rights to prosecute any and all Revested Causes of Action and Plan Trust Causes of Action, respectively, against any entity, except as otherwise expressly provided herein. Unless any Estate Causes of Action against an entity are expressly waived, relinquished, transferred, exculpated, released, compromised, or settled in this Plan or the Confirmation Order, the Debtor and the Plan Trustee expressly reserve all Estate Causes of Action, for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Causes of Action upon, after, or as a consequence of the confirmation of the Plan. For the avoidance of doubt, nothing in the Plan shall require the Plan Trustee to commence or pursue litigation concerning any Plan Trust Cause of Action.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A.    *Executory Contracts and Unexpired Leases*

On the Confirmation Date, but subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date (subject to the provisions of this Article VI), other than those executory contracts and unexpired leases identified in the Plan Supplement for assumption by the Reorganized Debtor or the Plan Trustee, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease rejections described above, as of the Confirmation Date.

B.    *Rejection Damages Bar Date*

All Claims arising from the rejection of executory contracts and unexpired leases pursuant to the Plan must be filed with the Bankruptcy Court and served upon the Plan Trustee on or before

the date that is thirty (30) days after the later of (a) the Effective Date and (b) the date of entry of an order of the Bankruptcy Court approving such rejection. Any Claims not filed within such time shall be forever barred from assertion against the Debtor, its Estate, the Plan Trustee, and the Plan Trust Assets. A Claim for rejection damages shall be classified and treated in Class 5 (General Unsecured Claims). Pursuant to the Comprehensive Mediation Settlement, neither the Indenture Trustee nor the Authority shall have a Claim for the rejection of the Bond Lease or the Ground Lease.

C.      *Effect of Post-Confirmation Rejection*

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

D.      *Non-Occurrence of Effective Date*

If the Effective Date does not occur prior to such time as the applicable Chapter 11 Case is closed, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

E.      *Indemnification Obligations*

Any obligations of the Debtor pursuant to its certificate of incorporation and bylaws, or pursuant to its organizational documents or applicable non-bankruptcy law, or any other agreements entered into by the Debtor at any time prior to the Effective Date, to indemnify current and/or former trustees, directors, officers, agents, and/or employees with respect to all present and future actions, suits, and proceedings brought by any of the College Accountants or their Representatives against the Debtor or such trustees, directors, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtor, irrespective of whether such indemnification is owed in connection with an event occurring before or after the Petition Date shall not be released, waived, discharged or Impaired by confirmation of the Plan. Such obligations shall be deemed and treated as an executory contract assumed as of the Effective Date by the Debtor under the Plan and shall continue as obligations of the Plan Trust.

F.      *Reservation of Rights*

Nothing contained in this Plan shall constitute an admission by the Debtor that any executory contract or unexpired lease is, in fact, an executory contract or unexpired lease or that the Debtor has any liability thereunder.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Plan Distributions*

The Plan Trustee shall make all Distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

B.    *Distribution Record Date*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Debtor, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date. The Debtor shall have no obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. The Debtor and the Plan Trustee, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**PLEASE NOTE THAT IF YOU ACQUIRE A CLAIM FOLLOWING THE DISTRIBUTION RECORD DATE, YOU WILL NOT RECEIVE A DISTRIBUTION ON ACCOUNT OF SUCH CLAIM. IN ADDITION, IF YOU SELL OR TRANSFER YOUR CLAIM BEFORE THE DISTRIBUTION RECORD DATE, YOU WILL NOT RECEIVE A DISTRIBUTION ON ACCOUNT OF SUCH CLAIM.**

C.    *Objections to Claims; Estimation of Claims*

Except insofar as a Claim is Allowed under the Plan, the Plan Trustee, and any other party in interest to the extent permitted under section 502(a) of the Bankruptcy Code, shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before (a) the one-hundred eightieth (180th) day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as may be fixed by the Bankruptcy Court upon the request of the Plan Trustee (the "Claims Objection Deadline"). Nothing herein shall require the Debtor or the Plan Trustee to object to any Claim.

The Plan Trustee may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

The Debtor and the Plan Trustee shall be entitled to assert and reserve any and all defenses to the allowance of Claims other than the Bond Lease Claim, the Bank Claims, and the Indemnity Claims, each of which shall be Allowed as set forth herein.

D.    *No Distributions Pending Allowance*

Notwithstanding any other provision of this Plan to the contrary, no Distribution of Cash or property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan. The procedures with respect to the resolution of Disputed Claims shall be set forth in the Plan Supplement. For the avoidance of doubt, to the extent a Class of Claims will be entitled to no Distributions under the Plan, such Claims will not be subject to reconciliation by the Plan Trustee.

E.    *Reserve of Cash Distributions*

On any date that Distributions are to be made under the terms of this Plan, the Plan Trustee shall reserve Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. Such Cash or property shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

F.    *Distribution After Allowance*

Within the later of (i) seven (7) Business Days after such Claim becomes an Allowed Claim and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, the Plan Trustee shall distribute, to the extent available, all distributable Cash or other property, including any interest, dividends, or proceeds thereof, to which a holder of an Allowed Claim is then entitled in accordance with the Plan and the Plan Trust Agreement; *provided* that, to the extent any Plan Trust Assets have not yet been collected or liquidated by the Plan Trustee, such Plan Trust Assets shall be distributed to holders of Allowed Claims as soon as reasonably practicable following the collection and liquidation thereof.

G.    *No Recourse*

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Estate, the Plan Trustee, or any of their respective professionals, consultants, officers, trustees, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

H.    *Application of Distributions*

Any Distribution made under the Plan on account of an Allowed Claim shall be allocated first to the principal amount of such Claim (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to any portion of such Claim for accrued but unpaid interest.

I.    *Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any holder is returned as undeliverable, no Distribution to such holder shall be made unless and until the Plan Trustee has determined the then-current address of such holder, at which time such Distribution shall be made to such holder without interest; *provided, however,* that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date on which such Distribution was attempted to be made; *provided further* that Plan Trustee shall use reasonable efforts to locate a holder if any Distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to the Plan Trustee automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the claim of any holder to such property or interest in property shall be forever barred.

J.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Plan Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances, *provided that* the Debtor and the Plan Trustee, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable amount of time to respond. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan, *provided that* if the recipient provides the required information or otherwise satisfies the Plan Trustee that withholding is not required within 180 days after the request is made, such withheld amount shall then be distributed to the recipient.

In the case of a non-Cash Distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate Cash necessary to pay over the withholding tax.

K.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan, Confirmation Order or other Bankruptcy Court order or otherwise required by applicable law, postpetition interest shall not

accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

L.    *Foreign Currency Exchange Rate*

Except as specifically provided for in the Plan or an order of the Bankruptcy Court, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the then applicable noon spot rate for such non-U.S. currency as of the Petition Date for all purposes under the Plan, including voting, allowance, and distribution.

M.    *Setoffs and Recoupment*

The Debtor and/or the Plan Trustee are authorized to set off against or recoup from any Claims (to the extent not released pursuant to the Plan) of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Plan Trustee of any such claim they may have against the holder of such Claim.

N.    *Distributions Free and Clear*

Except as may be otherwise provided in this Plan, all Distributions hereunder shall be free and clear of any Liens, Claims, encumbrances, and other interests.

O.    *De-Minimis Distributions and Donation*

There shall be no Distributions on account of Allowed General Unsecured Claims to the extent such Distribution will result in a payment of less than $50.00 to the holder of such Claim, and such amount otherwise payable upon such Claim shall revert back to the Plan Trust. Unless otherwise set forth in this Plan or the Plan Trust Agreement, the Plan Trustee may donate any remaining Plan Trust Assets to a charitable institution if the Distribution of such assets is too costly, too burdensome, or impracticable.

P.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtor or the Plan Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment (before or after the Effective Date) on account of such Claim from a party other than the Debtor. To the extent a holder of a Claim receives a Distribution on account of such Claim under the Plan and receives payment from a party other than the Debtor or the Plan Trustee on account of such Claim, such holder shall, within ten (10) days of receipt thereof, repay or return the Distribution to the Debtor or Plan Trustee, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such holder to timely repay or return such Distribution shall result in the holder owing the Plan Trustee annualized interest at the federal

33

judgment rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the 10-day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

To the extent that one or more of the Debtor's insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, *however*, if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to a Debtor insurer, and such holder in fact repays all or a portion of the Claim to such insurer, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the respective rights and defenses of the Debtor or the Plan Trustee, as applicable, and the holder of such Claim.

3.      Applicability of Insurance Policies

Except as otherwise expressly set forth in the Plan, nothing herein shall constitute or be deemed a waiver of any Cause of Action that the Debtor or the Plan Trustee and any holders of Claims, may hold against any other Entity under any insurance policies.

## ARTICLE VIII
## EFFECTS OF PLAN CONFIRMATION

A.      *Injunction*

**Except as otherwise expressly provided in this Plan, and except in connection with the enforcement of the terms of this Plan or any documents provided for or contemplated in this Plan, all Entities who directly or indirectly have held, hold or may hold Claims against the Debtor or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Plan Trust, the Plan Trustee, or their successors and assignees or any of their assets and property, with respect to any such Claim; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Plan Trust, the Plan Trustee, or their successors and assignees, or any of their assets and property, with respect to any such Claim; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, the Plan Trust, the Plan Trustee, or their successors and assignees or any of their assets and property, with respect to any such Claim; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due the Debtor, the Estate, the Plan Trust, the Plan Trustee, or their successors and assignees or any of their assets and, with respect to any such Claim, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim. Without limiting the foregoing, the automatic stay provided under section 362(a) of the Bankruptcy Code shall remain in effect until the Chapter 11 Case is closed. Nothing contained in this Article VIII.A shall prohibit the holder of a timely-filed**

34

proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or to enjoin or prohibit the interpretation or enforcement by the holder of such Claim of any of the obligations of the Debtor or the Plan Trustee under this Plan.

B.  *Exculpation and Limitation of Liability*

On the Effective Date, the Debtor, the Debtor's Board of Trustees, the Bondholders Committee, the Indenture Trustee, the Banks, the Indemnity Claimants, and the Baptist Entities, in all such parties' capacities, and any such parties' respective current and former (i) members, (ii) officers, (iii) directors and trustees, (iv) affiliates, (v) employees, (vi) advisors, (vii) attorneys, (viii) representatives, (ix) financial advisors, (x) investment bankers, or (xi) agents and any of such parties' successors and assigns (collectively, the "Exculpated Parties"), shall not have or incur, and are hereby released from, any claim, obligation, Causes of Action, or liability to one another or to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act taken or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to or arising out of (i) the Chapter 11 Case, (ii) formulation, negotiation, and filing of this Plan, (iii) filing the Chapter 11 Case, (iv) the pursuit of confirmation of this Plan, (v) the consummation and implementation of this Plan, (vi) the administration of this Plan or the property to be distributed under this Plan, or (vii) any other post-petition act taken or omission originating or occurring in connection with or in contemplation of the restructuring or liquidation of the Debtor, except for any fraud, willful misconduct, or gross negligence as determined by a Final Order. Notwithstanding the foregoing, the releases set forth in the immediately preceding sentence shall exclude (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Case and (ii) the Debtor's indemnification obligations or other contractual obligations to officers, trustees, and directors. For the avoidance of doubt, nothing herein shall affect any rights concerning the payment of Professional Fees. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability. The Confirmation Order shall serve as a permanent injunction against any Entity seeking to enforce any claim or cause of action against the Exculpated Parties that has been exculpated pursuant to this Article VIII.B.

C.  *Release by the Debtor*

On the Effective Date, the Debtor, on its own behalf and the Estate, shall be deemed to release unconditionally (a) all of their Representatives and (b) the Released Parties, of and from any and all Claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken solely in their capacities described above for any omission, transaction, agreement or event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or its business and affairs, the Bonds, the Bond Claims, the Bond Lease Claim, the Bond Documents, the Bank Claims, the Bank Loan Documents, the Chapter 11 Case, the

35

Disclosure Statement, the Plan, the Restructuring Support Agreement, the Mediation, any transactions proposed in connection with the Chapter 11 Case or any other contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any obligations arising under the Plan or the obligations assumed hereunder; <u>provided</u>, <u>however</u>, that the foregoing provisions of this section shall not affect (i) any liability of any of (a) the College Accountants; (b) the External Trusts other than those for which the Baptist Foundation is or has served as trustee; (c) the trustees of the External Trusts other than the Baptist Foundation; and (d) any issuers of any past or current insurance policies that provide or may have provided coverage of any kind for the benefit of the Debtor and/or any of the Indemnity Claimants; (ii) the liability of any Person for any act or omission that constitutes gross negligence, willful misconduct, fraud or criminal acts as determined by a Final Order, (iii) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or that were previously, entered into in connection with the Plan, (iv) except as otherwise expressly set forth in the Plan, any objections by the Debtor or the Plan Trustee to Claims filed by any Person against the Debtor and/or the Estate, including rights of setoff, refund, recoupment or other adjustments, or (iv) the rights of the Debtor or the Plan Trustee to assert any applicable defenses, cross-claims, counterclaims, or other Causes of Action in litigation or other proceedings asserted against the Debtor. The releases in this Article VIII.C apply only to the Released Parties solely in their respective capacities as such. For the avoidance of doubt, nothing herein shall affect any rights concerning the payment of Professional Fees.

D.      *Release by Holders of Claims and other Parties in Interest*

On the Effective Date, the Released Parties, and all other Persons and their Representatives who directly or indirectly have held, hold, or may hold Claims or Causes of Action against the Debtor or the Estate, whether known or unknown, shall be deemed by virtue of their receipt of Distributions or the other treatment contemplated under the Plan, and with respect to those Released Parties that are Mediation Parties, by virtue of their execution and delivery of the Comprehensive Mediation Settlement Agreement, to have forever waived and released all such rights, Claims, or Causes of Action, whether based upon tort or contract or otherwise, that they heretofore, now or hereafter possess or may possess against any of the Debtor Released Parties or any of the other Released Parties and shall be deemed to have covenanted with each of the Debtor Released Parties and each of the Released Parties to release and not to (a) sue or otherwise seek recovery from any of the Debtor Released Parties or any of the other Released Parties on account of any Claim, Cause of Action, obligation, suit, judgment, damages, right and liability whatsoever, in any way in any way related to the Debtor or related to or arising out (whether directly or indirectly) of the Debtor's business affairs, the Bonds, the Bond Claims, the Bond Lease Claim, the Bond Documents, the Bank Claims, the Bank Loan Documents, the Chapter 11 Case, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Mediation, the transactions proposed in connection with the Chapter 11 Case or any other contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any obligations arising under the Plan or the obligations assumed hereunder, including but not limited to any Claim or Causes of Action based upon tort, breach of contract, violations of federal or

36

state securities laws or otherwise, based in whole or in part upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (b) assert against any of the Debtor Released Parties or any other Released Party any Claim, Cause of Action, obligation, suit, judgment, damages, right, or liability that any holder of a Claim or Cause of Action may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtor, or its business and affairs, the Bonds, the Bond Claims, the Bond Lease Claim, the Bond Documents, the Bank Claims, the Bank Loan Documents, the Chapter 11 Case, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the transactions proposed in connection with the Chapter 11 Case or any other contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any obligations arising under the Plan or the obligations assumed hereunder, **provided**, **however**, **(i)** none of the Debtor Released Parties or the Released Parties shall be released from any Claim or Cause of Action that is (A) wholly unrelated to the Bonds, the Bond Claims, the Bond Lease Claim, the Bond Documents, the Bank Claims, the Bank Loan Documents Bonds, the Bond Claims, or any other debts of the Debtor or the matters that are the subject of the Comprehensive Mediation Settlement Agreement and (B) primarily based on any act or omission that constitutes gross negligence, willful misconduct, fraud or criminal acts as determined by a Final Order, (ii) the foregoing release shall not apply to obligations arising under the Plan; and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan. For the avoidance of doubt, nothing herein shall affect any rights concerning the payment of Professional Fees.

E.      *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under section 105 or section 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case. For the avoidance of doubt, the releases, exculpations, and injunctions in Articles VIII.A, VIII.B, VIII.C and VIII.D of this Plan shall continue in full force and effect after the closing of the Chapter 11 Case.

## ARTICLE IX
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

A.      *Conditions to the Effective Date*

The following are conditions to the Effective Date that shall have been satisfied or waived in accordance with Article IX.B:

(i)      the Confirmation Order shall have become a Final Order in full force and effect and shall not subject to any stay of effectiveness;

(ii)    the Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending;

(iii)   all Statutory Fees incurred for periods arising prior to the Effective Date shall be paid by the Debtor or placed in a reserve for such purpose;

(iv)    (a) the Baptist Entities shall have paid the Baptist Entities Plan Contribution to the Debtor, and (b) from the proceeds of the Baptist Entities Plan Contribution, the Debtor shall have distributed: (1) Three Hundred Fifty Thousand Dollars ($350,000) to the Bondholders Committee Counsel in full payment of the Bondholders Committee Substantial Contribution Payment and (2) the remaining Four Hundred Thousand Dollars ($400,000) to the holder of the Allowed Class 2 Claim;

(v)     (a) the Foundation UPMIFA Transfer shall have been made by the Debtor to the Foundation from the Restricted Funds, less (to the extent not previously reimbursed by the Foundation) amounts expended by the Debtor since the conveyance of the Campus Property to the Foundation for the maintenance, security, and insurance of, and utilities furnished to, the Campus Property, plus interest thereon at a fixed rate of five percent (5.0%) per annum, (b) the Plan Professional Fee Reserve shall been funded from the Restricted Funds, and (c) the balance of the Restricted Funds remaining thereafter shall have been disbursed by the Debtor to the Plan Trustee;

(vi)    the Plan Trust shall have been created, the Plan Trust Agreement shall have been fully executed, the Plan Trustee shall have been appointed, and the Plan Trust Assets shall have been transferred to the Plan Trust;

(vii)   each of the Mann Lawsuit, the Banks Lawsuit, and the Indenture Trustee Lawsuit shall have been dismissed with prejudice, but such dismissals shall not be required unless and until items (i) through (vi) above have been satisfied;

(viii)  except as otherwise expressly provided herein, all documents to be executed, delivered, assumed, or performed upon or in connection with consummation of the Plan shall have been executed, delivered, assumed, or performed, as the case may be, and any conditions contained therein (other than consummation of the Plan or notice of consummation) shall have been satisfied or waived in accordance therewith, including all documents included in the Plan Supplement;

(ix)    all other actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered, as the case may be, to the appropriate parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable law;

(x)     there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan; and

(xi)     the Plan Professional Fee Reserve shall have been established and funded in full, in Cash, in accordance with, and in the amounts required by, the Plan.

B.     *Waiver of Conditions*

The conditions to confirmation of the Plan and the Effective Date set forth in this Article IX may be waived only by the written agreement of the Debtor, the Indenture Trustee, counsel for the Bondholders Committee, and the Banks, in their sole and absolute discretion, in whole or in part, without notice, leave, or order of the Bankruptcy Court.

C.     *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## ARTICLE X
## MODIFICATION, REVOCATION OR
## WITHDRAWAL OF PLAN

A.     *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such modification is material or immaterial, and seek confirmation of the Plan consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to revoke, withdraw, alter, amend, or modify the Plan, one or more times, after the Confirmation Date, to the extent necessary to carry out the purposes and intent of the Plan. The Debtor may, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.     *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of Plan; Effect of Non-Occurrence of Confirmation Date or Effective Date*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file a subsequent plan. If the Debtor revokes or withdraws the Plan, the Confirmation Date does not occur, or the Effective Date does not occur within ninety (90) days of the Confirmation Date (or such other extended deadline as may be ordered by the Bankruptcy Court), then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied

in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the fullest extent permissible, including jurisdiction to:

(i)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim, including (a) the resolution of any request for payment of any Administrative Expense and (b) the resolution of any objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(ii)    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals pursuant to the Bankruptcy Code or the Plan;

(iii)   resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims for rejection damages or cure amounts pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed, or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

(iv)    ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(v)     adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(vi)    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

40

(vii)    enter and enforce any order and related agreements for the sale or transfer of property and obligations thereunder pursuant to, among other things, sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(viii)    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(ix)    issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan and ensure compliance with the Plan;

(x)    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

(xi)    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Article VII.P.1;

(xii)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xiii)    determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(xiv)    enter an order or final decree concluding or closing the Chapter 11 Case;

(xv)    adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(xvi)    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(xvii)    determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(xviii)    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

41

(xix)  hear and determine matters concerning state, local, federal taxes and fees in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xx)  hear and determine all disputes that arise out of the transfer of the Plan Trust Assets to the Plan Trust on the Effective Date;

*(xxi)*  enforce all orders previously entered by the Bankruptcy Court; and

*(xxii)*  hear any other matter as to which the Bankruptcy Court has jurisdiction;

*provided, however*, that the Bankruptcy Court shall not retain exclusive jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

# ARTICLE XII
# MISCELLANEOUS PROVISIONS

A.  *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, and any and all holders of Claims (irrespective of whether such Claims are deemed to have accepted the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all of the Debtor's counterparties to executory contracts, unexpired leases, and any other prepetition agreements.

B.  *Additional Documents*

On or before the Effective Date, the Debtor may enter into any such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.  *Filing of Monthly and Quarterly Reports and Payment of Statutory Fees*

The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Trustee. All monthly operating reports covering pre-Effective Date periods shall be prepared and filed by the Debtor. All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Statutory Fees") prior to the Effective Date shall be paid by the Debtor on the Effective Date. Statutory Fees relating to any period of time after the occurrence of the Effective Date shall be paid by the Plan Trustee. All Statutory Fees shall be payable as set forth above and such obligations shall continue

42

until the earliest to occur of the Debtor's Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims before the Effective Date.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices*

All notices, requests, and demands to or upon the Debtor shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor, to:

> Judson College
> Attn: President
> 302 Bibb Street
> Marion, AL 36756

with copies to:

> Jay Bender
> James Bailey
> Bradley Arant Boult Cummings LLP
> 1819 5th Avenue North
> Birmingham, AL 35203
>
> and
>
> Alexandra Garrett
> Silver Voit Garrett & Watkins, P.C.
> 4317-A Midmost Drive
> Mobile, AL 36609

43

If to the Plan Trustee to:

  To be set forth in the Plan Supplement.

  In the notice of the Effective Date, the Debtor shall notify all Entities that, in order to continue to receive documents after the Effective Date pursuant to Bankruptcy Rule 2002, such Entity (excluding the Bankruptcy Administrator) must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After service of the notice of the Effective Date, the Plan Trustee shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to the Bankruptcy Administrator and those Entities who have filed such renewed requests.

## G.   *Term of Injunctions or Stays*

  **Unless otherwise provided in the Plan or in the Confirmation Order, (i) all injunctions or stays provided for in the Chapter 11 Case under section 105 or section 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case and (ii) all injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

## H.   *Entire Agreement*

  Except as otherwise indicated, the Plan (including the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## I.   *Exhibits*

  All exhibits and documents included in the Plan Supplement are incorporated into, and are a part of, the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at https://www.alsb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

## J.   *Nonseverability of Plan Provisions*

  If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and

shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without consent of the Debtor; and (iii) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtor shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and therefore, neither the Debtor nor the Plan Trustee will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

L.      *Closing of the Chapter 11 Case*

The Plan Trustee shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, any applicable Local Rules, and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

M.      *Document Retention*

On and after the Effective Date, the Plan Trustee shall maintain documents in accordance with the terms and conditions of the Plan Trust Agreement.

N.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, Plan Supplement, or any other document (but excluding, for the avoidance of doubt, the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan (without reference to the Plan Supplement), the Plan (without reference to the Plan Supplement) shall govern and control.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Case 24-20004    Doc 5    Filed 01/08/24    Entered 01/08/24 17:55:56    Desc Main
Document      Page 49 of 50

Dated: January 8, 2024

Respectfully submitted,

DEBTOR:

JUDSON COLLEGE, INC.

By:  */s/ Daphne R. Robinson*
        Name: Daphne R. Robinson
        Title: President